UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CIVIL ACTION NO. 06-625-C**

**ICE CREAM DISTRIBUTORS
OF EVANSVILLE, LLC,**                                                                                    **PLAINTIFF,**

**V.**                          **MEMORANDUM OPINION AND ORDER**

**EDY'S GRAND ICE CREAM, INC.,**                                                           **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the defendant's original and amended motions to transfer or, in the alternative, to compel arbitration (DE 7, 16).  The court, having reviewed the record and being otherwise advised, will grant the amended motion to transfer pursuant to 28 U.S.C. § 1404(a) (DE 16) and will deny the other motions as moot.

**I.     BACKGROUND**

In March 2004, Edy's Grand Ice Cream, Inc. ("Edy's"),[1] the defendant in this matter, entered into a "Preferred Distributor Agreement" with a company known as Ice Cream Distributors, Inc. ("ICD").  Under the terms of this agreement, Edy's authorized ICD to distribute Edy's products to grocery stores in Kentucky and parts of Indiana.  ICD was not authorized to assign its rights and obligations under the Preferred Distributor Agreement without Edy's prior written consent.

---

[1] The court will refer to Edy's and its parent company, Dreyer's Grand Ice Cream, Inc., as "Edy's" collectively.

In June 2004, Ice Cream Distributors of Evansville, LLC ("ICDE"), the plaintiff in this matter, purchased ICD's distribution rights under an "Asset Purchase Agreement." Edy's did not consent to ICD's assignment of its rights under the Preferred Distributor Agreement to ICDE; in fact, Edy's had no prior knowledge of the sale. According to Edy's, because it did not consent to ICD's assignment, it entered into a new "Standard Distributor Agreement" with ICDE, which confirmed that ICDE had the right to distribute Edy's products to grocery stores throughout Kentucky, parts of Indiana, and parts of Illinois. ICDE denies the existence of such an agreement.[2]

Edy's has lost all of its copies of the Standard Distributor Agreement that it allegedly entered into with ICDE, but Edy's points to various items of proof to affirm the existence and content of the agreement. To prove the existence of the alleged agreement, Edy's has provided an affidavit from Mark Hagan, who works for Edy's as a Sales and Distribution Manager. In this affidavit, Hagan states that he "specifically recall[s] receiving a signed copy of the Standard Distribution Agreement . . . from Dave Garrett, one of the owners of ICD[E], and forwarding the agreement to Mike Olsen in Chicago, Illinois." (DE 16-3 at 4.) Edy's has also submitted electronic mail correspondence between Hagan and Garrett (DE 16-6),

---

[2]At the hearing on this motion, ICDE disputed the existence of the agreement, despite having failed to file an affidavit denying that the agreement exists, as it did in a related action pending in the United States District Court for the Northern District of California. *See Dreyer's Grand Ice Cream, Inc. v. Ice Cream Distributors of Evansville*, No. 07-00140 (N.D. Cal. filed Sept. 19, 2007).

which it claims further substantiates the existence of the Standard Distribution Agreement between it and ICDE.  Furthermore, Edy's claims that the existence of the executed Standard Distribution Agreement is proven by the fact that ICDE distributed Edy's ice cream products pursuant to the agreement's terms and conditions until the parties' relationship soured and this litigation commenced.

To prove the content of the Standard Distribution Agreement, Edy's has submitted an unsigned copy of the agreement.  This unsigned copy contains both a forum-selection clause, designating the laws of California as the governing law of the agreement and the state or federal courts of Oakland, California, as the exclusive venue for all legal actions arising under the agreement, as well as a dispute resolution clause, requiring the parties to submit to mediation and, if necessary, arbitration, to resolve any dispute arising from the agreement.  *See* DE 16-5 at 9.  Edy's also claims that ICDE was "on notice" that it would have to submit to these forum-selection and dispute-resolution provisions even before it allegedly signed the Standard Distribution Agreement because similar clauses were present in the Preferred Distributor Agreement between Edy's and Ice Cream Distributors.  (DE 16-2 at 5.)

On November 9, 2006, ICDE sued Edy's in Kentucky state court for tortious interference with contract and with prospective economic advantage.  Edy's removed the matter to this court on December 22, 2006, and on January 10, 2007, filed its original motion (DE 7).  On March 2, 2007, the parties jointly moved

to hold this case in abeyance pending mediation, but, on May 21, 2007, Edy's filed its amended motion (DE 16). On October 14, 2007, the court granted Edy's motion for leave to file supplemental authority (DE 31), which the court has considered in resolving the motions presently at hand.

## II. ANALYSIS

This court will address only the merits of Edy's motion to transfer. First, however, the court will dispense with some arguments which are unavailing.

The jurisdictional arguments raised by ICDE provide no reason to deny Edy's motion to transfer. To begin, this court need not and will not consider the claim that the federal court in California, to which Edy's seeks to transfer this matter, lacks personal jurisdiction over ICDE in this matter – such a claim has already been resolved in California. *See Dreyer's Grand Ice Cream, Inc. v. Ice Cream Distributors of Evansville*, No. 07-00140 (N.D. Cal. filed Sept. 19, 2007).

Moreover, this court will not at this time resolve the factual dispute regarding the existence or non-existence of an agreement or valid forum-selection and dispute-resolution clauses, because that issue is already set to be adjudicated in the Northern District of California. *Id.*

In addition, contrary to ICD's claim, the court finds that Edy's did not waive its right to move for a transfer by removing the case to this court first. ICD elected to file suit in Kentucky state court; thus, according to 28 U.S.C. § 1441(a), Edy's could not have initially removed this case from Kentucky state court to federal

4

court in California, one of the forums contemplated by the alleged contract at issue, because this court was the only federal venue to which Edy's could initially remove this case. Whatever contractual rights Edy's may have under the alleged forum-selection clause, it would be unreasonable for those rights to be waived by Edy's compliance with the statutory requirements of removal.

Turning, then, to the standard for the motion to transfer, 28 U.S.C. § 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As the Sixth Circuit recently noted in *Kerobo v. Sw. Clean Fuels Corp.*, 285 F.3d 531, 537 (6th Cir. 2002), the issue of whether a case should be transferred under § 1404(a) is consigned to the discretion of the district court, which, in addition to "factors . . . that bear solely on the parties' private ordering of their affairs," "must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988).

**A.   Convenience of the Parties and Witnesses**

ICDE argues in its reponse that this matter should remain in the Western District of Kentucky for the "convenience of the parties and witnesses" because "a majority of its witnesses are located in Kentucky" and "ICD[E] maintains a distribution facility in Kentucky" (DE 21-1 at 11-12). ICDE also claims "most of the

ICD[E] customers to whom Edy's made various false and misleading statement[s] are located in Kentucky" (DE 21-1 at 12). In its reply, Edy's contends ICDE misrepresented the location of many of its primary witnesses as "the vast majority of witnesses are located outside of Kentucky": "ICD[E]'s corporate representatives are located in Indiana"; moreover, "Edy's current and former employees are in California, as well as Michigan and Washington" (DE 24-1 at 12).

ICDE alleges in Count III of its three-count complaint that Edy's tortiously interfered with its prospective economic advantage with companies located in Jeffersonville, Lexington, and Richmond, Kentucky, as well as Deerfield, Illinois, and Dayton, Ohio (DE 1-2, at 10-14). With regard to Counts I and II of ICDE's complaint, which allege interference by Edy's with ICDE's relationship with Southern Belle Dairy Co., LLC ("Southern Belle"), the court also takes judicial notice that the corporate office and production facility of Southern Belle are located in Somerset, Kentucky, which is in the Eastern District of Kentucky. *See* FED. R. EVID. 202(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known with the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned") and (c) ("A court may take judicial notice, whether requested or not").

While it is unknown which witnesses will ultimately be needed in this matter, it is quite likely that ICDE, as an Indiana corporation, will call witnesses – including

ICDE managers – from Indiana to testify to the injuries it alleges. Given the locations of the businesses with which Edy's allegedly interfered, it is also likely that many more witnesses from the Eastern District of Kentucky, Indiana, and Ohio will be called than witnesses from the Western District of Kentucky. Indeed, in addition to Counts I and II alleging improper actions on the part of Edy's with regard to ICDE's relationship with Southern Belle, which is located in the Eastern District of Kentucky, of the eight incidents of alleged interference specifically laid out by ICDE in Count III, only one – an alleged communication with Daughtery's Marathon in Jeffersonville, Kentucky – took place in the Western District of Kentucky with the others occuring in the Eastern District of Kentucky or in Illinois or Ohio (DE 1). For these reasons, ICDE's claim that the Western District of Kentucky is a more convenient forum for the parties rings hollow.

If convenience truly was a concern for ICDE, it could have brought this action in the Southern District of Indiana, the location of its principal place of business, or the Eastern District of Kentucky, where most of the conduct alleged in the complaint occured. Otherwise, the convenience of the parties suggests this action should be transferred to the Northern District of California, which covers Oakland, California, the location of the principal place of business of the defendant. The presence of one of many alleged incidents of misconduct by Edy's and a single warehouse owned by ICDE in the Western District of Kentucky do not outweigh these countervailing considerations.

7

**B. The Interests of Justice**

As the Supreme Court noted in *Ricoh*, the convenience of the parties and witnesses must be weighed against "those public-interest factors of systemic integrity and fairness that . . . come under the heading of 'the interest of justice.'" 487 U.S. at 30.  The "interests of justice" analysis under § 1404(a) also supports the transfer of this action to the Northern District of California.  That court has already asserted personal jurisdiction over ICDE, the defendant in that action.  The action in the Northern District of California is also further along than the present action as that court has already ordered a trial on the issue of the enforceability of the forum-selection and dispute-resolution clauses.  Finally, both parties to this action are sophisticated businesses with access to modern communications technology which should afford them ready access to the sources of proof in their dispute.  Accordingly,

    **IT IS ORDERED** that the amended motion to transfer (DE 16) is **GRANTED**.

    **IT IS FURTHER ORDERED** that this matter is **TRANSFERRED** to the United States District Court for the Northern District of California, Oakland Division, for further consideration.

    **IT IS FURTHER ORDERED** that the remaining motions are **DENIED AS MOOT**.

Signed on  September 27, 2007

**Jennifer B. Coffman, Judge**
**United States District Court**